UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LOVELACE,

                         Petitioner,                    Case Number 2:06-CV-11109
                                                        Honorable Arthur J. Tarnow

v.

BLAINE LAFLER,

                         Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Christopher Lovelace, ("Petitioner"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges his Wayne Circuit Court no contest plea convictions to second degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm in the commission of a felony (felony-firearm) MICH. COMP. LAWS § 750.227b. The petition raises two claims: (1) the state trial court erred in failing to hold an evidentiary hearing on his claim of actual innocence; and (2) Petitioner was denied the effective assistance of trial and appellate counsel. The Court will deny the petition because his claims are without merit.

I. Background

Somewhere between 7:30 and 8:10 p.m. on June 20, 2003, Samuel Ford was shot to death while he was standing with friends at the corner of Seven Mile Road and Bradford in Detroit, Michigan.

*Lovelace v Lafler*, USDC No. 06-11109

Two of Ford's friends, Taurean Davis and Jehron White, told police officers that Petitioner and his uncle were the perpetrators. They said that Petitioner, holding a handgun at his side, exited from the front passenger seat of a green Ford Focus that stopped at the corner. Petitioner's uncle or cousin then exited the vehicle, told Petitioner to step aside, and shot Ford in the head, killing him. The shooter was never identified or arrested.

Petitioner was charged with first-degree premeditated murder and felony-firearm. Davis and White testified against Petitioner at the preliminary examination. They described how Petitioner and Ford were in a dispute over the affections of a young woman. A few years before the shooting, Petitioner and Ford were in an altercation outside of their high school. Petitioner brandished a gun and shot it during the altercation, but no one was hit. Petitioner was expelled as a result. Then, approximately a week before the fatal shooting, Petitioner encountered Ford at Eastland Mall and made a hand gesture towards him as if he was pulling a trigger.

Davis and White testified that minutes prior to the fatal shooting, they saw Petitioner drive by in his own car, and then he returned with his uncle in a the Ford Focus. They testified that after Petitioner confronted Ford, Petitioner's uncle emerged from the driver's side of the car and shot Ford in the head. Both men ran from the scene.

A major issue in the case was the exact time when the shooting occurred. Petitioner's trial counsel filed several pretrial motions to obtain records and recordings of the 9-1-1 calls. The tapes of the calls had been lost, but computer generated records were produced showing

2

*Lovelace v Lafler*, USDC No. 06-11109

the first 9-1-1 call was made at 7:49 p.m. The timing was important because Petitioner was on probation and wearing a tether on the date of the shooting. Records showed that Petitioner returned home on the date of the shooting at 7:42 p.m. His home was located about four blocks from the location of the shooting.

On February 24, 2004, an evidentiary hearing was held in the trial court regarding the 9-1-1 tapes and records. Petitioner argued that the case should be dismissed because of the loss of the tapes. Two witnesses, the 9-1-1 operator and a custodian of the records, testified regarding the loss of the tapes and explained the coding of the 9-1-1 call report. The trial court denied the motion because Petitioner was still able to present evidence based on the records as to when the 9-1-1 call were made. Trial was scheduled to begin the next day.

The next morning, rather than stand trial, Petitioner entered a plea of no contest to the reduced charge of second-degree murder and felony-firearm. The parties agreed that Petitioner's sentence for second-degree murder would be 17-to-40 years plus a two year consecutive term for the firearm charge.

The trial court engaged in a colloquy with Petitioner where he was advised of the trial rights he would be waiving if he pleaded no contest. Petitioner indicated his understanding. Petitioner affirmed that no one had threatened or coerced him into accepting the plea bargain. A portion of a police report was read into the record in order to establish the basis for the convictions. The trial court accepted the plea.

*Lovelace v Lafler*, USDC No. 06-11109

At the sentencing hearing, Petitioner requested to withdraw his plea. The trial court noted that no written motion had been filed, and it went ahead with sentencing. Petitioner received the agreed sentence.

Petitioner thereafter filed an application for leave to appeal in the Michigan Court of Appeals, which raised the following claim:

> The trial court abused its discretion in denying defendant's motion to withdraw his no contest plea prior to sentencing when the interest of justice would require a plea withdrawn and there was no prejudice to the prosecution if the plea was withdrawn.

The Michigan Court of Appeals denied the application in a summary order "for lack of merit in the grounds presented." *People v. Lovelace*, No. 260371 (Mich. Ct. App. April 19, 2005).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claim as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed by the Court. *People v. Lovelace*, 474 Mich. 934 (2005) (table).

Petitioner then commenced this action by filing his habeas petitioner with the Court on March 15, 2006. Respondent filed an answer to the petition along with rule 5 materials on August 28, 2006, asserting that Petitioner has not presented his claim to the state courts as a Federal constitutional one. On June 26, 2008, this Court entered an opinion and order

4

*Lovelace v Lafler*, USDC No. 06-11109

holding the case in abeyance to allow Petitioner to exhaust his claim in state court by federalizing it.

Petitioner returned to the state courts, and instead of filing a motion for relief from judgment in the trial court, he attempted file appellate papers directly in the Michigan Court of Appeals. This appeal, however, was dismissed for failure to pursue the case in conformity with the rules. *People v. Lovelace*, No. 287361 (Mich. Ct. App. Jan. 23, 2009).

Petitioner then filed a motion for relief from judgment with the trial court, raising the following claims:

> I. The good cause, and actual prejudice requirements of M.C.R. 6.508(d)(3) should be waived in this case as defendant is actually innocent with proof.

> II. Where defendant is actually innocent with proof, the trial court abused its discretion, violating defendant's due process rights, in failing to allow defendant to withdraw his involuntary, unintelligently tendered plea of no contest. In the alternative defense trial counsel was ineffective for not filing a formal motion asserting defendant's actual innocence and requesting a plea withdrawal.

The trial court denied the motion for relief from judgment citing M.C.R. 6.508(D)(3), and discussing the merits of Petitioner's claims. *People v. Lovelace*, No. 03-007811-01, Opinion and Order (Wayne County Cir. Ct (April 8, 2010).

Petitioner next filed an application for leave to appeal in the Michigan Court of Appeals raising the following four issues:

> I. The trial court abused its discretion and committed plain error concluding defendant had failed to demonstrate actual innocence.

*Lovelace v Lafler*, USDC No. 06-11109

II. The trial court abused its discretion and committed plain error denying relief from a nolo contendere plea induced by coercion without conducting an evidentiary hearing.

III. Defendant was denied his constitutionally effective assistance of counsel, and the contrary ruling by the trial judge was clearly erroneous.

IV. The trial court committed plain error and abused its discretion ruling defendant had not satisfied the criteria of M.C.R. 6.508(d) for obtaining relief from judgment.

The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Lovelace*, No. 299010, Mich. Ct. App. Order (May 2, 2011). One Court of Appeals judge dissented, stating she would hold the trial court erred in failing to conduct an evidentiary hearing.

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied relief under M.C.R. 6.508(D). *People v. Lovelace*, 490 Mich. 968 (2011)(table).

Petitioner filed his amended petition on March 6, 2012.

## II. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

*Lovelace v Lafler*, USDC No. 06-11109

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law when a state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Unreasonable application of clearly established federal law occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. In terms of application, the Supreme Court has stated that, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). In this way, the writ of habeas corpus operates as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

### III. Discussion

A.    Actual Innocence and Evidentiary Hearing

Petitioner's first claim asserts that the trial court erred in failing to hold an evidentiary hearing on his claim that he can prove his actual innocence before it decided his motion for relief from judgment. The trial court rejected Petitioner's actual innocence claim as follows:

Defendant first argues he is actually innocent of the crimes in which he has pled guilty because: 1) He was not at the scene of the crime when the

7

*Lovelace v Lafler*, USDC No. 06-11109

shooting took place, which can be confirmed by his tether he was wearing which defendant claims shows him at home at the time the shooting was committed. 2) The statement from defendant's mother, Alicia Lovelace, supports his supposition that he was at home during the time in which the crime was committed. However, the 911 incident report also supplied by the defendant on page 11, states at 7:55 p.m., "shooting J/H-Perp gone" and the next line states "shot by Chris," with the following line stating, "shot n heal/EMS." Thus, when all the evidence is viewed in the aggregate, coupled with defendant's voluntary confession to his involvement of the murder, along with the eyewitnesses that place defendant at the scene with a weapon drawn and pointed at the decedent, this court does not find merit in defendant's argument that he is actually innocent.

Opinion Denying Motion for Relief From Judgment, p. 3.

First, this claim is not cognizable because Petitioner does not have a federal constitutional right to an evidentiary hearing during state-post conviction review.

There is no federal constitutional right to appeal a state court conviction. *Cleaver v. Bordenkircher*, 634 F. 2d 1010, 1011 (6th Cir. 1980). Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, whether the Michigan courts erred in denying petitioner's motion for an evidentiary hearing on his actual innocence claim is a question of state law that cannot be reviewed in a federal habeas petition. See *Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim. Accordingly, Petitioner is not entitled to habeas relief due to the failure of the state courts to grant him an evidentiary hearing.

*Lovelace v Lafler*, USDC No. 06-11109

While a deprivation of this sort cannot form the basis for issuing a writ of habeas corpus, it might support a request for an evidentiary hearing in this Court for the purpose of developing a record on Petitioner's claim. See *May v. Renico*, 2002 U.S. Dist. LEXIS 23566, 2002 WL 31748845, *5 (E.D. Mich. November 12, 2002). This Court must therefore determine whether Petitioner is entitled to an evidentiary hearing.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id*. If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id*. Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if it can determine that they lack merit. See *Stanford v. Parker*, 266 F. 3d 442, 459-60 (6th Cir. 2001).

Even if Petitioner presented his proffered evidence at a hearing, it would not demonstrate his actual innocence. To make a showing of actual innocence, "a petitioner must offer new evidence showing that it is "more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931, 1935 (2013).

9

*Lovelace v Lafler*, USDC No. 06-11109

Petitioner's evidence amounts to the tether and 9-1-1 records and copies of witness statements to the police that were available prior to trial. He has also provided his mother's affidavit which states that he did not tamper with the tether and returned home as indicated in the records. The problem with the claim is that Petitioner cannot shown that the shooting occurred after he arrived home despite the fact that the tether records show that he arrived home at 7:42 p.m and the 9-1-1 records show that the first call was received at 7:49 p.m.

The two eyewitnesses who testified at the preliminary examination said that they were standing out on the sidewalk from about 7:00 p.m., and estimated that about twenty minutes passed before the shooting. They testified that after the shooting they ran. Other witnesses, who were in their yards near the scene, told police that the people at the corner scattered after the shooting, and then people returned and gathered around the victim. One witnesses said he was unable to get through to 9-1-1 and eventually asked his wife to call. Both witnesses who testified at the preliminary examination testified that they ran after the shooting and then went to find a phone to call 9-1-1 after the shooting.

There is no indication in the record or in any of Petitioner's proffered evidence exactly how much time elapsed between the shooting and the first call. And according to the evidence presented at the preliminary examination and records attached to the petition, Petitioner lived only four blocks from the scene. Therefore, the fact that Petitioner arrived home seven minutes before the first 9-1-1 call was received does not foreclose the possibility that he was at the scene. Given the fact that the eyewitnesses testified that they ran when the

*Lovelace v Lafler*, USDC No. 06-11109

shooting began, and then tried to find a pay phone, nothing precludes the possibility that ten or more minutes passed before the first call was made to 9-1-1. That is, Petitioner's has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of his proffered evidence of innocence.

Accordingly, Petitioner's claim of actual innocence does not entitle him to an evidentiary hearing or habeas relief.


B.     Ineffective Assistance of Trial and Appellate Counsel

Petitioner's second claim asserts that he was denied the effective assistance of trial and appellate counsel. He asserts that his trial attorney coerced him into accepting the plea bargain by telling him that he would spend the rest of his life in prison despite his meritorious alibi defense, and then counsel failed to file a motion to withdraw the plea despite Petitioner's protestations that he was innocent. Petitioner also asserts that his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel during Petitioner's direct appeal.

When a defendant is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. See *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. See *Brady v. United States*, 397 U.S. 742, 755 (1970). The

11

*Lovelace v Lafler*, USDC No. 06-11109

voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id*. at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id*. at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748.

The state court record reveals that Petitioner's guilty plea was knowing, intelligent, and voluntary. There is no evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea. Petitioner was represented by legal counsel and conferred with counsel prior to and during the plea process. The plea was not entered until after trial counsel explored the facts surrounding Petitioner's alibi defense. The trial court advised Petitioner of his trial rights and the fact that he would be giving up those rights by pleading guilty. The court discussed the charge and the maximum possible sentence. Petitioner indicated that he understood the terms of the plea, that he was pleading guilty of his own free will, and that he had not been coerced, threatened, or promised anything else to induce his plea. Petitioner has not shown that his plea was unknowing or involuntary.

Nor has Petitioner demonstrated that he entitled to relief on any claim that his plea was involuntary due to the ineffective assistance of counsel. The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on

12

*Lovelace v Lafler*, USDC No. 06-11109

the ground that he or she was denied the Sixth Amendment right to the effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, the petitioner must also demonstrate that counsel's performance resulted in prejudice, i.e., "that there is a reasonable probability that, but for counsel's errors, [he/she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id*. The Supreme Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id*. at 59-60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly

13

*Lovelace v Lafler*, USDC No. 06-11109

deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. at 788. The Supreme Court has also emphasized the extraordinary deference to be afforded trial counsel in plea bargaining. See *Premo v. Moore*, 562 U.S.    , 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage"); see also *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011) (citing *Premo*).

The record does not support Petitioner's claim that his no contest plea was unknowing or involuntary because defense counsel coerced him to accept a plea. At the plea hearing, Petitioner denied that he was coerced or threatened by anyone to enter his plea. Any claim that counsel pressured him into pleading guilty conflicts with his sworn testimony at the plea hearing that he was doing so of his own free will. As aptly stated by the Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-the-record statements:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

14

*Lovelace v Lafler*, USDC No. 06-11109

*Ramos*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Petitioner has failed to show that counsel misadvised him or was otherwise ineffective.

In any event, it does not appear that counsel's advice was in any way deficient. Petitioner did, in fact, face a mandatory life sentence if he was convicted as charged after a trial. The case against him as an aider or abettor appeared to be strong. Two eyewitnesses–both of whom knew Petitioner from high school–identified him as being involved in the shooting. Petitioner was arrested about two hours after the shooting, and though the evidence indicated that the driver was the one who fired the shot, Petitioner's right hand tested positive for gunshot residue. While the records discussed above certainly narrowed the time frame in which Petitioner could have committed the crime, it was not unreasonable for counsel to advise Petitioner to accept the plea bargain rather than take his chances with an alibi defense of questionable strength.

Nor did Petitioner's claim that he is actually innocent require his counsel to move to withdraw the plea. The United States Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea  merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338,

15

*Lovelace v Lafler*, USDC No. 06-11109

344 (S.D.N.Y. 1979) (footnotes omitted). In any event, the trial court effectively considered Petitioner's claim that he was entitled to withdraw his plea based on his claim of actual innocence in its decision denying Petitioner's motion for relief from judgment. Accordingly, Petitioner has failed to demonstrate that he was denied the effective assistance of counsel.

Petitioner's claim of ineffective assistance of appellate counsel fails because he had not shown that he had any meritorious claims to present on appeal. *Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006).

Therefore, none of Petitioner's claims merit a grant of habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner demonstrates a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists would not debate the Court's resolution of Petitioner's claims. Therefore, the Court denies Petitioner a certificate of appealability. The Court will, however, grant Petitioner permission to appeal in forma pauperis.

16

*Lovelace v Lafler*, USDC No. 06-11109

## V. Conclusion

The Court DENIES the petition for a writ of habeas corpus **WITH PREJUDICE**. The

Court **DENIES** a certificate of appealability but **GRANTS** permission to proceed on appeal

in forma pauperis.

**SO ORDERED.**


s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: March 3, 2014

I hereby certify that a copy of the foregoing document was served upon parties/counsel of
record on March 3, 2014, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Assistant